IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN L. HARRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 3:14-CV-1323-NJR |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on Petitioner Susan L. Harris's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). For the reasons set forth below, the motion is denied.

## BACKGROUND

**I. Underlying Criminal Case**

In 2011, Petitioner Susan L. Harris and her co-defendant, Ashley Drummond, stole various identities and used them to open credit card accounts in Madison County and St. Clair County. *United States v. Harris,* SDIL Case No. 3:12-CR-30226, Doc. 80.[1] Drummond worked at Anderson Hospital, where she was able to acquire the personal identifying information of elderly patients from hospital charts and computer records. *Id.* at 4. Harris and Drummond would then use the elderly patients' personal

---

[1] Citations to Petitioner's criminal case will be cited throughout this Order as SDIL Case No. 3:12-CR-30226.

identifying information to open credit card accounts in the victims' names. *Id.* At least eleven elderly patients were defrauded of approximately $10,190.74.

On December 7, 2011, Drummond was arrested for the theft of a patient's credit card after being caught on surveillance footage. *Id.* at 4. Following Drummond's arrest, federal investigators learned of Harris's involvement. *Id.* at 5. On July 19, 2012, Harris was indicted on two counts: Count I—Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1349, and Count III—Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. SDIL Case No. 3:12-CR-30226, Doc. 1. Assistant Federal Public Defender Daniel G. Cronin was appointed to represent Harris on July 30, 2012. *Id.* at Doc. 16.

On the day Harris was released on bond, she submitted to a drug test, which turned up positive for marijuana. SDIL Case No. 3:12-CR-30226, Doc. 80. On July 29, 2012, Harris was referred to Chestnut Health Services in Granite City for mental health and substance abuse treatment. Harris had a troubled background and previously had been diagnosed with bipolar disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, anger management issues, and depression. *Id.* at Doc. 80, pp. 20-21. On September 5, 2012, Harris underwent an integrated mental health and substance abuse assessment at Chestnut Health. At the conclusion of the assessment, it was recommended that Harris be monitored for changes in cognition, affect, and behavior; however, it was also recommended that treatment be terminated as there was

identifying information to open credit card accounts in the victims' names. *Id.* At least eleven elderly patients were defrauded of approximately $10,190.74.

On December 7, 2011, Drummond was arrested for the theft of a patient's credit card after being caught on surveillance footage. *Id.* at 4. Following Drummond's arrest, federal investigators learned of Harris's involvement. *Id.* at 5. On July 19, 2012, Harris was indicted on two counts: Count I—Conspiracy to Commit Mail Fraud, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 1349, and Count III—Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A. SDIL Case No. 3:12-CR-30226, Doc. 1. Assistant Federal Public Defender Daniel G. Cronin was appointed to represent Harris on July 30, 2012. *Id.* at Doc. 16.

On the day Harris was released on bond, she submitted to a drug test, which turned up positive for marijuana. SDIL Case No. 3:12-CR-30226, Doc. 80. On July 29, 2012, Harris was referred to Chestnut Health Services in Granite City for mental health and substance abuse treatment. Harris had a troubled background and previously had been diagnosed with bipolar disorder, attention deficit hyperactivity disorder, post-traumatic stress disorder, anger management issues, and depression. *Id.* at Doc. 80, pp. 20-21. On September 5, 2012, Harris underwent an integrated mental health and substance abuse assessment at Chestnut Health. At the conclusion of the assessment, it was recommended that Harris be monitored for changes in cognition, affect, and behavior; however, it was also recommended that treatment be terminated as there was

no finding of addiction or an Axis I diagnosis.[2] *Id.* at 21.

Defense counsel testified in his affidavit that he was aware of Harris's troubled past and mental health issues and, for those reasons, early in the case he had discussed retaining a psychologist for possible sentencing mitigation purposes (Doc. 6-1, ¶ 4). Prior to November 22, 2012, counsel had nine meetings with Harris (*Id.*). At each meeting, Harris asked pertinent questions and gave detailed responses to counsel's questions (*Id.*). Thus, counsel had no doubts as to her competency and no basis for requesting a competency exam (*Id.*). Harris does not rebut these facts. Counsel further testified that on September 7, 2012, he sent Harris a letter detailing her case and giving her a sentencing chart that reflected sentencing guidelines and a possible Rule 35 reduction. (*Id.*). Harris denies receiving this letter (Doc. 7).

On November 22, 2012, Harris was hospitalized at St. Elizabeth's Hospital after it was suspected that she intentionally overdosed on Xanax. SDIL Case No. 3:12-CR-30226, Doc. 80 at p. 21. Counsel states that he was concerned about this incident, reviewed the police report and medical records, and discussed the incident with Harris (Doc. 6-1, ¶5). While the medical records indicated diagnoses of depressive disorder, posttraumatic stress disorder, personality disorder, chronic mental illness, and significant character pathology, her physician concluded she was not a candidate for involuntary admission because she was demonstrating alertness, impulse control, good judgment, and logical thought after release (Doc. 6-1, at 2). Counsel attests that his own

---

[2] Axis I clinical disorders include the major mental disorders such as schizophrenia, bipolar, depression, and anxiety disorders. Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Rev. 2000).

impression of Harris after her overdose was consistent with those findings (*Id.*).

On December 3, 2012, Magistrate Judge Stephen C. Williams held a change of plea hearing, but Harris abruptly aborted her plea and decided to go to trial. SDIL Case No. 3:12-CR-30226, Doc. 53. Harris states that she stumbled during her "attempted" guilty plea, at which point counsel told her she was embarrassing him for "being so high" and now she had to go to trial (Doc. 1). Counsel testified that he was concerned Harris was over-medicated on valid prescription medication or possibly under the influence of illegal drugs that day, but did not view that possibility as calling her competency into question. He denies telling Harris he was embarrassed by her or that she had to go to trial (Doc. 6-1, ¶ 6).

On December 5, 2012, a jury convicted Harris on both counts. Case No. 3:12-CR-30226, Docs. 59, 61. Defense counsel filed a sentencing memorandum arguing that a sentence between 36 and 42 months would "fully take into account Susan Harris's tragic childhood…" *Id.* at Doc. 82. On March 25, 2013, the Honorable G. Patrick Murphy [3] sentenced Harris to 24 months' imprisonment on each count, to run consecutively. Harris also was required to pay $7,648.97 in restitution. *Id.* at Doc. 85. The court also stated that Harris "might benefit from a program of mental health treatment," including a psychiatric evaluation, in order to determine "why someone that's of reasonable intelligence and with some job skills would just for almost all your adult life be involved in some scam, one after another . . . [and] would be assaultive, as you have shown yourself to be." *Id.* at Doc. 99, p. 22.

---

[3] Judge Murphy retired on December 1, 2013.

Harris appealed her conviction to the Seventh Circuit Court of Appeals on April 5, 2013, and initially was represented by defense counsel. *Id.* at Doc. 88. After defense counsel declared a "conflict of interest," Harris was appointed new counsel on appeal. *Id.* at Docs. 106, 117. Harris alleged she was denied an accurate and reliable jury determination because the district court empaneled an anonymous jury. *Id.* at Doc. 133-2, at 4. The Seventh Circuit Court of Appeals rejected Harris's argument and affirmed her conviction and sentence on September 9, 2014. *Id.* at Docs. 133-1, 133-2. According to the website maintained by the Bureau of Prisons, Harris was released from the custody on September 13, 2016.[4]

## II.    § 2255 Petition

Harris filed her *pro se* Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on November 26, 2014 (Doc. 1). The Court ruled that Harris's petition survived preliminary review under Rule 4 of the Rules Governing Section 2255 Proceedings and directed the Government to respond by July 15, 2015. Harris was directed to reply by July 29, 2015 (Doc. 5). On July 15, 2015, the government responded to the motion (Doc. 6), and approximately two weeks later, Harris replied to government's response (Doc. 7).

In her petition, Harris asks the Court to reduce her sentence by twelve months because her counsel was constitutionally ineffective. Specifically, Harris claims counsel:

> (1) failed to investigate competency or request a competency hearing when competency was at issue;

---

[4] Unfortunately, Harris has not updated her address with the Clerk of Court (*see* Doc. 11).

(2) did not act in Harris's best interest by not ordering a competency exam;

(3) gave erroneous advice concerning the Residential Drug Abuse Program; and

(4) misadvised Harris about her sentencing exposure if she pleaded guilty instead of going to trial.

(Doc. 1). Harris claims that, had she been competent and had counsel given proper advice, she would have pleaded guilty rather than going to trial.

### DISCUSSION

Title 28, Section 2255 of the United States Code requires a court to vacate, set aside, or correct the sentence of a prisoner in custody if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, the "in custody" requirement of the statute does not prevent claims to be brought by petitioners who have now served their sentences but previously filed their motions while still in custody. *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968) (holding that petitioner was still entitled to have the merits of his claim considered after his sentence expired because petitioner could still be "bear[ing] the consequences of assertedly unlawful conviction").

Habeas corpus relief under § 2255 is reserved for extraordinary situations. *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993); *see also Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013). A petitioner can meet the threshold requirement of an extraordinary situation by demonstrating an "error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete

miscarriage of justice." *Blake*, 723 F.3d at 878-79 (citations omitted). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)).

I.  **Evidentiary Hearing**

An evidentiary hearing for a 28 U.S.C. § 2255 motion is only granted when "the petitioner alleges facts that, if proven, would entitle him to relief." *Kafo v. United States*, 467 F. 3d 1063, 1067 (7th Cir. 2006). But if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a hearing is not required. *Id*. Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce v. United States*, 256 F.3d 592, at 597 (7th Cir. 2001). Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner "must file [a] detailed and specific affidavit showing he has actual proof of allegations he is making." *Miller v. United States*, 183 Fed. Appx. 571, 578 (7th Cir. 2006). For evidentiary hearing consideration, the Seventh Circuit requires a petition made pursuant to 28 U.S.C. § 2255 to "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement; "its absence precludes the necessity of a hearing." *Id*. The specific allegations in the petition and accompanying affidavit must go beyond merely unsupported assertions, as "[m]ere unsupported allegations cannot sustain a

petitioner's request for a hearing." *Prewitt v. United States*, 83 F.3d 812, at 819 (7th Cir. 1996).

Harris has not requested an evidentiary hearing, nor does the Court find that a hearing is required. Even accepting Harris's version of the facts as true, the evidence and record do not support a finding that counsel fell below an objective standard of reasonableness in his representation or that petitioner was unduly prejudiced. Because the record in this case conclusively shows Harris is not entitled to any relief, no evidentiary hearing is required.

## II. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is properly raised in a § 2255 motion because it implicates the Sixth Amendment, which provides criminal defendants the right to counsel. U.S. CONST. amend. VI. Generally speaking, counsel is ineffective when his or her conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This Circuit has held that ineffective assistance claims are "best addressed through a motion in collateral proceeding pursuant to § 2255 because the trial record is not developed precisely for the object of litigating or preserving the claim." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) (quotation and citation omitted).

"To demonstrate that the right to counsel was violated by ineffective assistance, a person challenging a conviction must meet the familiar two-part standard set forth in

*Strickland.*" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland*, 466 U.S. at 688). The petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688); *see also Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (quoting *Harrington v. Richter*, 562 U.S. 86, 88 (2011)).

The petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McElvaney*, 735 F.3d at 532 (quoting *Strickland*, 466 U.S. at 688). When challenging a sentence, "a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence." *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland,* 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence" in the sentence. *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006). It is not enough to show that the errors possibly had "some conceivable effect" on the sentence. *Strickland*, 466 U.S. at 694.

"Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010)); *see also Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006) ("[A] party bears a heavy burden in making a winning claim

based on ineffective assistance of counsel."); *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987) (explaining that "few petitioners" are expected to be able to pass through the "eye of the needle created by *Strickland*").

The Court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") A petitioner's "failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) (citing *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990)).

  a. **Failure to Order a Competency Exam**

In Harris's first two claims, she argues counsel was ineffective when he failed to order her a competency exam, when competency was at issue in her case. Harris alleges counsel, as well as the Court, had information concerning her behavior including "suicide attempts[,] depression, manic episodes[,] and unusual assaultive behavior." Harris claims that had she been competent, she would have followed through with her guilty plea. The Government contends that Harris fails to demonstrate how her behavioral issues deem her incompetent to plead guilty or decide to stand trial, and counsel's sworn testimony on their numerous meetings supports her competency.

The standard for measuring a defendant's competency to plead guilty is the same as the competency standard to stand trial—both require defendant to have "sufficient

present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (citing *Drusky v. Missouri*, 420 U.S. 162, 171 (1975)). If a defendant "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense," defendant may not be subject to stand trial. *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Here, Harris has failed to demonstrate how counsel's failure to order a competency exam fell below an objective standard of reasonableness. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Harris does not allege that she did not understand the claims against her, nor does she allege she was unable to consult and assist counsel in the case against her. Furthermore, counsel met with Harris nine times before her change of plea hearing and advised her about her case after she aborted the plea. In his affidavit, under penalty of perjury, counsel states that Harris appeared to understand the case against her at each meeting. Defense counsel's belief in his client's competency was further supported by the doctor's report finding Harris was alert and demonstrated logical thought after her release from St. Elizabeth's Hospital (Doc. 6-1, at 2). While Judge Murphy mentioned during sentencing that Harris could benefit from mental health treatment, his comment was not in reference to her mental capacity, but rather her

continued involvement in scams and her "assaultive" nature, when she has the intelligence and skills to do something with her life.

Accordingly, counsel's belief in Harris's competency was objectively reasonable at the time of the proceedings, and his failure to order a competency exam does not constitute ineffective assistance of counsel.

### b. Erroneous Advice Concerning Residential Drug Abuse Program

In Harris's third claim, she argues counsel gave erroneous advice regarding the Residential Drug Abuse Program (RDAP), which allows prisoners who are convicted of nonviolent offenses to receive sentence reductions after successfully completing the drug treatment program. *See* 18 U.S.C. § 3621(e)(2). Harris alleges counsel falsely informed her she was eligible for a sentence reduction under § 3621(e) when she was not.

The Government denies Harris's allegations that counsel gave erroneous advice on the RDAP. Counsel attests that he never gave Harris such advice because he never believed she was qualified for the program and there was no documented need for treatment (Docs. 6; 6-1).

Even if counsel had given such advice, however, the Court finds that Harris has failed to demonstrate the prejudice necessary to succeed on her claim. "Mistakes in an attorney's advice to a client do not constitute, per se, ineffective counsel." *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (citing *United States v. Teller,* 762 F.2d 569, 577 (7th Cir. 1985)). A petitioner must be able to show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence."

*Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010) (citing *Strickland,* 466 U.S. at 695).

Here, whether Harris was eligible for the RDAP program and could possibly receive a sentence *reduction* in the future after completing the program has no bearing on the sentence she actually received—whether after a jury trial *or* by way of a guilty plea. Thus, she cannot show that, but for counsel's errors, there is a reasonable probability she would have received a different sentence. *See Griffin*, 622 F.3d at 844 ("a petitioner must show that but for counsel's errors, there is a reasonable probability that he would have received a different sentence").

    **c.**     **Erroneous Advice Regarding Sentencing Exposure**

Harris's final claim is that counsel did not properly advise her about her sentencing exposure had she pleaded guilty versus going to trial. She claims counsel advised her that her mandatory minimum 24-month sentence would have to be served when, in reality, a "Rule 35 or 5K could have reduced my mandatory minimum." (Doc. 1, p. 12). Harris argues that, had she known her sentence could be reduced if she cooperated with the Government, she would have pleaded guilty rather than going to trial. *Id.*

The Government contends that counsel sent Harris a letter, dated September 7, 2012, detailing her potential sentencing exposure before trial. In the letter, which the Government attached as an exhibit, counsel states: "[t]he prosecutor is not ruling out my request to dismiss the current charges against you in favor of a new charge, misprision of a felony. Of course, neither is she agreeing at this point to do so." (Doc. 6-2, at 1). In

regard to Rule 35, counsel advises Harris that she may receive a Rule 35 reduction after sentencing "if [she] truthfully cooperates with the prosecutor," and that "not everyone who cooperates with the government gets a Rule 35 motion." The Government contends this letter contradicts Harris's allegations. Harris argues she never received such letter and implies the letter was fabricated by the Government to defend against this case.

Assuming counsel sent the letter to Harris, his performance clearly does not fall below an objective standard of reasonableness. The September 7, 2012 letter explained, in detail, Harris's sentencing possibilities, including the guideline ranges, that she could receive a reduction in her offense level for acceptance of responsibility, that she could receive a Rule 35 reduction a year after sentencing, and that the prosecutor was still considering dismissing the current charges in favor of a new charge, misprision of a felony, but that no deal was in their hands yet. Thus, counsel's "pre-trial performance regarding the plea agreement was within the range of competence we demand from criminal attorneys." *United States v. Golden*, 102 F.3d 936, 943 (7th Cir. 1996).

Even if the Court assumes, however, that Harris did not receive the letter, she has failed to demonstrate the required prejudice. Where a petitioner alleges attorney incompetence resulting in her *rejection* of a plea agreement, the Court must consider whether the petitioner has established (1) through objective evidence that (2) there is a reasonable probability that she would have accepted the alleged proposed plea agreement absent defense counsel's advice. *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998).

Here, Harris has not pointed to any objective evidence whatsoever demonstrating she would have pleaded guilty had she known about potential sentence reductions for cooperating with the Government. There is no record of any purported plea agreement offered to Harris, and she has provided no affidavit or other evidence indicating an offer was on the table that she would have taken had she known her sentence may be reduced if she cooperated. Moreover, under Rule 35(b), 18 U.S.C.S. § 3553(e), and U.S. Sentencing Guidelines Manual § 5K1.1, the Government *may* motion for the court to reduce the sentence of a defendant for "substantial assistance in the investigation or prosecution of another person who has committed an offense." *Wade v. United States*, 504 U.S. 181, 182 (1992). Even if she had pleaded guilty, a sentence reduction was not guaranteed.

Where a petitioner produces no objective evidence, the Seventh Circuit has held that a statement indicating the petitioner would have accepted a plea agreement is "self-serving and alone, insufficient to establish . . . a reasonable probability that [s]he would have accepted the plea." *Paters*, 159 F.3d at 1046 (quoting *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991)). Because Harris has not shown she was prejudiced by counsel's alleged failure to advise her of any potential Rule 35 or 5K1.1 sentence reductions, her claim fails.

### CERTIFICATE OF APPEALABILITY

Harris cannot appeal the denial of her § 2255 petition unless this Court or the Court of Appeals issues a certificate of appealability. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to § 2253, a certificate of appealability may issue "only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "That standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Welch v. United States*, 136 S. Ct. 1257, 1263 (2016) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons detailed above, the Court has determined that Harris did not state any grounds for relief under § 2255, and reasonable jurists could not debate that conclusion. Thus, Harris has not made "a substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## CONCLUSION

For the reasons stated above, Petitioner Susan Harris's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED.** The Court **DECLINES** to issue a certificate of appealability. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED: November 20, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**